UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

PAMELA FLICK and
MARY DOWLING-STEFANSKI,

      Plaintiffs,

v.

                       Cause No.: 2:08-cv-0211-JVB-PRC

WELLPOINT, INC., and
RAYMOND J. AIMONE,

      Defendants.

## MEMORANDUM OF LAW SUPPORTING PLAINITFFS' MOTION TO COMPEL

      Pursuant to Fed. R. Civ. P. 37 and L.R. 7.1(b), the Plaintiffs, Pamela Flick ("Flick") and Mary Dowling-Stefanski ("Dowling-Stefanski") (collectively, "Plaintiffs"), submit this memorandum of law in support of their Motion to Compel.

## MATERIAL FACTS

      1.     Plaintiffs are former employees of WellPoint, Inc. ("WellPoint"). *Complaint* [Doc. 1], ¶¶ 14-15; *Answer* [Doc. 11], ¶¶ 14-15.

      2.     Plaintiff Flick was employed by WellPoint from May 30, 2006 until WellPoint terminated her employment in January 2008. *Complaint* [Doc. 1], ¶¶ 16, 148-150; *Answer* [Doc. 11], ¶¶ 16, 148-150.

      3.     Plaintiff Dowling-Stefanski was employed by WellPoint from May 30, 2006 until September 4, 2007. *Complaint* [Doc. 1], ¶¶ 17, 121; *Answer* [Doc. 11], ¶¶ 17, 121.

1

4.     While employed by WellPoint, Plaintiffs worked as health insurance agents at WellPoint's Merrillville office, located at 1000 East 80th Place, Suite 503 South, Merrillville, Indiana 46410 (the "Merrillville Office"). *Complaint* [Doc. 1], ¶ 36; *Answer* [Doc. 11], ¶ 36.

5.     Plaintiffs worked with two other WellPoint agents at the Merrillville Office, Raymond Aimone ("Aimone") and Jerry Panozzo. *Ex. A*, pp. 48-49.[1]

6.     During Plaintiffs' employment with WellPoint, Plaintiffs' allege that Aimone made sexually inappropriate remarks to Plaintiffs, touched Plaintiffs in sexually inappropriate ways, and otherwise sexually harassed the Plaintiffs on a regular basis. *See Complaint* [Doc. 1], ¶¶ 40-83, 112-113, 123-127, 130-131, 136, 144-146; *see e.g. Ex. A.*, pp. 230-233; *see e.g. Ex. B*, pp. 187-188.[2]

7.     All of Aimone's harassing conduct towards Plaintiffs occurred either inside the Merrillville Office or in the Merrillville Office parking lot. *Complaint* [Doc. 1], ¶ 11; *Answer* [Doc. 11], ¶ 11; *Ex. A*, p. 251.

8.     On July 21, 2008, Plaintiffs filed their Complaint against WellPoint and Aimone (collectively, the "Defendants"). *See Complaint* [Doc. 1]. In their Complaint, Plaintiffs allege that Aimone sexually harassed Plaintiffs at the Merrillville Office and that WellPoint failed to remedy Aimone's harassing conduct. Furthermore, the Plaintiffs allege in their Complaint that they are entitled to, among other damages, back-pay and lost future wages. *See id.*

---

[1] Excerpts from Pamela Flick's deposition transcript are attached as Exhibit A.

[2] Excerpts from Mary Dowling-Stefanski's deposition transcript are attached as Exhibit B.

2

***Plaintiffs' Request for Inspection***

9.     On October 13, 2008, Plaintiffs served WellPoint with the following request to

inspect the Merrillville Office pursuant to Fed. R. Civ. P. 34:

> Plaintiffs request that the Defendants' permit the Plaintiffs and their undersigned counsel to
> enter upon, inspect, and photograph the following premises: **1000 East 80th Place, Suite**
> **503 South, Merrillville, Indiana 46410.**

*See Ex. C.*[3]

10.    On December 11, 2008, WellPoint objected to Plaintiffs' request to inspect the

WellPoint Office as follows:

> Defendants object to this request as overbroad, unduly burdensome, and as undefined, vague
> and ambiguous because it fails to comply with Rule 34(b), which requires that such requests
> describe with reasonable particularity each item or category of items to be inspected, and
> must also specify a reasonable time, place, and manner for the inspection and for performing
> the related acts.  Until such time that Plaintiffs comply with the requirements of Rule 34,
> Defendant WellPoint will not grant Plaintiffs' request for entry to its property.

*See Ex. D.*[4]

11.    On March 13, 2009, Plaintiffs' counsel sent WellPoint's counsel a letter further

defining its request to inspect the Merrillville Office and explaining why such an inspection was

relevant to Plaintiffs' sexual harassment claims.    Specifically, Plaintiffs' counsel directed

WellPoint's counsel to Seventh Circuit case law holding that the "close quarters" of the defendants'

work environment is relevant in a sexual harassment case.  *See Ex. E.*[5]

---

[3] A copy of Plaintiffs' First Request for Inspection is attached as Exhibit C.

[4] A copy of WellPoint's Response to Plaintiffs' First Request for Inspection is attached as Exhibit D.

[5] A copy of Plaintiffs' counsel's March 13, 2009 letter to WellPoint's counsel is attached as Exhibit E.

3

12.     WellPoint's counsel admitted during Plaintiff Flick's deposition that "the layout of the office is important to some of [Plaintiffs Flick's] claims." *Ex. A*, pp. 51.

13.     WellPoint's counsel used diagrams of the Merrillville Office during both Plaintiffs' depositions. *See Ex. A*, pp. 51-59; *see also Ex. B*, pp. 84-87.

14.     After receiving no response to Plaintiffs' March 13, 2009 letter, Plaintiffs' counsel contacted WellPoint's counsel by email on April 10, 2009, and inquired as to whether WellPoint would allow Plaintiffs' to inspect the Merrillville Office as requested. *See Ex. F.*[6]

15.     On April 10, 2009, Plaintiffs' counsel and WellPoint's counsel discussed by telephone Plaintiffs' request to inspect the Merrillville Office. During this discussion, WellPoint's counsel informed Plaintiffs' counsel that WellPoint would not allow Plaintiffs to inspect the Merrillville Office unless certain conditions were met, including: the parties agreeing to a protective order or other similar measures to limit the disclosure of alleged protected and confidential information contained at the Merrillville office; appointment of a neutral photographer to take pictures of the office; and scheduling the inspection outside of office hours to limit potential disruption to the Merrillville Office. *See Ex. G.*[7]

16.     Plaintiffs' counsel represented to WellPoint's counsel during their April 10, 2009 discussion that Plaintiffs would be willing to conduct its inspection subject to these conditions.

17.     On May 5, 2009, Plaintiffs' counsel contacted WellPoint's counsel by telephone to schedule a date for the inspection. During this discussion, WellPoint's counsel made it clear to

---

[6] A copy of Plaintiffs' counsel's April 10, 2009 email to WellPoint's counsel is attached as Exhibit F.

[7] A copy of the email sent from WellPoint's counsel to Plaintiffs' counsel confirming this discussion on April 10, 2009 is attached as Exhibit G.

4

Plaintiffs' counsel that WellPoint would not allow Plaintiffs to inspect the premises, even under the terms and conditions that WellPoint had previously offered. That same day, WellPoint's counsel confirmed, in email to Plaintiffs' counsel, WellPoint's absolute refusal to allow Plaintiffs' inspection. *See Ex. H.*[8]

18.     In response to WellPoint's counsel's May 5, 2009 email, Plaintiffs' counsel sent an email to WellPoint's counsel that same day again explaining Plaintiffs' position that inspecting the Merrillville Office was highly relevant to Plaintiffs' claims and that any and all of WellPoint's alleged privacy concerns could be dealt with through an adequate protective order. Plaintiffs' counsel concluded his email by confirming that WellPoint had absolutely refused Plaintiff's request for inspection and informing WellPoint of Plaintiffs' intent to file this motion to compel. *See Ex. I.*[9]

### *Interrogatory No. 1 of Plaintiffs' Second Set of Interrogatories*

19.     On October 31, 2008, Plaintiffs served their Second Set of Interrogatories on WellPoint and asked WellPoint to provide the following information:

List all health insurance sales representatives (other than Plaintiffs) whom WellPoint employed in Indiana from January 1, 2005 to the present. For each individual listed, please provide:

      a.     The name of the individual;

      b.     The date the individual began employment with WellPoint;

      c.     The individual's starting rate of pay at WellPoint;

      d.     If the individual is no longer employed by WellPoint, the date the individual was separated from employment and his/her rate of pay at separation;

---

[8] A copy of an email sent from WellPoint's counsel to Plaintiffs' counsel confirming this May 5, 2009 conversation is attached as Exhibit H.

[9] A copy of Plaintiffs' counsel's May 5, 2009 email to WellPoint's counsel is attached as Exhibit I.

    e.  If the individual is currently employed by WellPoint, the individuals' current rate of pay; and

    f.  The total annual income that each individual earned from WellPoint in each year from 2005 to date as reported on the individual's IRS Form W-2.

*See Ex. J.*[10]

  20.  On December 11, 2008, WellPoint answered and objected to Plaintiffs' Second Set of

Interrogatories as follows:

> WellPoint objects to this request as overbroad, unduly burdensome, and not narrowly tailored to obtain relevant information as it seeks state-wide information irrelevant to Plaintiffs' claims. Subject to and without waiving these objections, WellPoint provides the following information for sales representatives in WellPoint's Merrillville, Indiana location:
>
>  Pamela Flick
>  May 30, 2006
>  January 16, 2008
>
>  Mary Dowling Stefanski
>  May 30, 2006
>  September 4, 2007
>
>  Ray Aimone
>  April 5, 1999
>  Current employee
>
>  Jerry Panozzo
>  October 27, 1997
>  Current employee

*See Ex. K.*[11]

  21.  On March 13, 2009, Plaintiffs' counsel sent WellPoint's counsel a letter requesting

that WellPoint provide a complete answer to this interrogatory. Plaintiffs' counsel explained that the

---

[10] A copy of Interrogatory No. 1 of Plaintiffs' Second Set of Interrogatories is attached as Exhibit J.

[11] WellPoint's Response to Interrogatory No. 1 of Plaintiffs' Second Set of Interrogatories is attached as Exhibit K.

requested information regarding other WellPoint agents' rate of pay was relevant to Plaintiffs' claims for lost future wages. Furthermore, Plaintiffs' counsel explained that the interrogatory was not overly broad or unduly burdensome because it was limited in geographic scope to Indiana agents and limited in time form 2005 to the present. *See Ex. E.*

22.    After receiving no response to Plaintiffs' March 13, 2009 letter, Plaintiffs' counsel contacted WellPoint's counsel by email on April 10, 2009, and inquired as to whether WellPoint would be providing a complete answer to this interrogatory. *See Ex. F.*

23.    On April 10, 2009, Plaintiffs' counsel discussed this discovery issue with WellPoint's counsel by telephone. During this discussion, Plaintiffs' counsel again explained Plaintiffs' position as to why the requested information was relevant to Plaintiffs' claims for lost future wages. In particular, Plaintiffs' counsel explained that knowing by how much other Indiana WellPoint agents' income increased from 2005 to date would tend to show how much Plaintiffs' income would have increased during that same time frame, had Aimone not sexually harassed them. WellPoint's counsel again objected to the relevancy of the requested information and confirmed WellPoint's objections in an email to Plaintiffs' counsel. *See. Ex. G.*

24.    On May 5, 2009, Plaintiffs' counsel and WellPoint's counsel again discussed this discovery issue. During this discussion, WellPoint's counsel made it clear to Plaintiffs' counsel that WellPoint would not be providing any additional information in response to this interrogatory. Immediately following this conversation, WellPoint's counsel confirmed in an email to Plaintiffs' counsel that WellPoint would not be providing any additional information in response to this interrogatory. *See Ex. H.*

7

25.    In response to WellPoint's counsel's May 5, 2009 email, Plaintiffs' counsel sent an email to WellPoint's counsel that same day again explaining Plaintiffs' position that the requested information was relevant to Plaintiffs' claims for lost wages.  Plaintiffs' counsel concluded his email by confirming that WellPoint had absolutely refused to provide any additional information in response to this interrogatory and informing WellPoint of Plaintiffs' intent to file this motion to compel.  *See Ex. I.*

## LAW AND ARGUMENT

### I.    Plaintiffs' Request for Inspection and Second Interrogatory No. 1 Fall Within the Federal Rules' Liberal Discovery Standard.

Federal Rule of Civil Procedure 34 provides that a party may "serve on any other party a request within the scope of Rule 26(b) . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2).  Furthermore, Federal Rule of Civil Procedure 33 provides that a party may serve interrogatories on any other party relating to any matter that "may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33.  Rule 26(b) broadly defines what matters are discoverable, providing that: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b).

Here, inspecting the Merrillville Office and information regarding other Indiana WellPoint agents' income from 2005 to date are discoverable.  It is undisputed that layout of the Merrillville

8

Office is highly relevant to Plaintiffs' sexual harassment claims because most of Aimone's harassing conduct occurred in that office. Furthermore, information regarding the income of other Indiana WellPoint agents is relevant to Plaintiffs' claims for back pay and lost future wages. And, these requests are narrowly tailored and reasonably calculated to lead to the discovery of admissible evidence. Therefore, Plaintiffs request that the Court grant their Motion to Compel and order WellPoint to: (1) allow Plaintiffs to inspect and photograph WellPoint's Merrillville Office; and (2) provide Plaintiffs with complete answers to Interrogatory No. 1 of Plaintiffs' Second Set of Interrogatories.

## II.     Plaintiffs Are Entitled to Inspect the Merrillville Office.

The "specific circumstances of the working environment" is a key factor courts consider in determining whether sexual harassment has taken place. *Robinson v. Sappington*, 351 F.3d 317, 330 (7th Cir. 2003). Whether conduct is "severe or pervasive" enough to amount to sexual harassment depends on the "totality of the circumstances" surrounding the alleged harassment, including whether the plaintiff and the harasser share "close working quarters." *Quantock v. Shared Marketing Services, Inc.*, 312 F.3d 899, 904 (7th Cir. 2002); *see also Smith v. Northwest Fin. Acceptance Inc.*, 129 F.3d 1408, 1414 (10th Cir. 1997) (holding that the "intimate office setting" increased the plaintiff's humiliation and the severity of the discriminatory conduct).

Here, there is no question that the layout of the Merrillville Office is relevant to Plaintiffs' claims, considering that most of Aimone's harassing conduct occurred at the Merrillville Office. Even WellPoint's counsel acknowledged the relevance of this information during Plaintiff Flick's deposition and used diagrams of the Merrillville Office while examining both Plaintiffs. *See Ex. A*, pp. 51-59; *see also Ex. B*, pp. 84-87. In order to prove their claims, Plaintiffs and their counsel need

9

to become familiar with the layout of the Merrillville Office, particularly where exactly Aimone's harassing conduct occurred. Plaintiffs also must be able to take pictures of the Merrillville Office in order to show this relevant information to the jury. And, inspection of the Merrillville office is necessary because Plaintiffs cannot obtain this highly relevant information from any other source.

Furthermore, despite WellPoint's contentions, Plaintiffs request to inspect the Merrillville Office complies with Federal Rule of Civil Procedure 34. Rule 34 requires a party requesting to enter and inspect the premises of another to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Here, Plaintiffs made clear that they were "not requesting carte blanch authority to inspect anything and everything within the Merrillville office. Rather, Plaintiffs's inspection will be limited to inspecting and photographing the spacial setting of the Merrillville office." *See Ex. D.* Therefore, Plaintiffs' request to inspect the Merrillville Office complies with Rule 34.

Finally, WellPoint's concern that the inspection will result in the disclosure of alleged protected and/or confidential information is tenuous at best. Plaintiffs' only interest in inspecting the Merrillville Office is to gather evidence regarding the layout of the office space. Plaintiffs are not requesting to inspect cabinets, files, or any other part of the Merrillville Office that may contain confidential information. Furthermore, even assuming that there is some minimal risk that inspecting the premises could expose WellPoint's confidential information, this risk can be adequately safeguarded through the use of a protective order. Plaintiffs have been willing to enter into such a protective order, and they remain willing to do so.

The layout of the Merrillville Office is highly relevant to Plaintiffs' claims and is discoverable under Rule 26(b). WellPoint's failure to permit Plaintiffs' to enter and inspect the

10

Merrillville Office is therefore unwarranted, and the Court should compel WellPoint to allow

Plaintiffs' to enter and inspect the Merrillville Office.

## III.   Plaintiffs are Entitled to Information Regarding Income Earned by Other Indiana WellPoint Agents.

WellPoint objected to Interrogatory No. 1 of Plaintiffs' Second Set of Interrogatories as

overbroad, unduly burdensome, not narrowly tailored, and seeking information irrelevant to

Plaintiffs' claims. *See Ex. K.* However, the requested information is relevant to Plaintiffs' claims

for back-pay damages and lost future wages. If Plaintiffs succeed on their sexual harassment claim,

then they can recover back-pay from WellPoint. *See* 42 U.S.C. 2000e-5 *et seq.* The Seventh Circuit

defines back-pay as the lost wages and benefits that the plaintiff "*would have received from the*

*defendant"* had the plaintiff not suffered an adverse employment action, less the income that the

plaintiff actually received from other employment. *See Seventh Circuit Civil Pattern Jury*

*Instructions*, 3.11 (emphasis added). Information regarding the annual income earned by other

Indiana WellPoint agents from 2005 to present would show the income growth rate for other Indiana

agents over roughly the same time frame that Plaintiffs worked at WellPoint. Despite WellPoint's

contentions, this information is relevant to Plaintiffs' claims for back-pay because it would tend to

show how much income Plaintiffs *would have received* from WellPoint, had they not been subjected

to constant verbal and physical sexual harassment and eventually terminated. Therefore, this

information is relevant and discoverable.

Furthermore, this interrogatory is not overly broad or unduly burdensome. Plaintiffs have

narrowly tailored their inquiry to agents employed by WellPoint in Indiana since January 2005. This

information will provide Plaintiffs with an adequate sample group for which Plaintiffs can calculate

an average income growth rate to support its back-pay and lost future wages calculations.

**IV.   Conclusion**

For these reasons, Plaintiff respectfully requests that the Court grant Plaintiffs' Motion to Compel and order WellPoint to: (1) allow Plaintiffs to inspect and photograph WellPoint's Merrillville Office; (2) provide Plaintiffs with complete answers to Plaintiffs' Second Set of Interrogatories; (3) pay Plaintiffs' reasonable expenses incurred in brining this motion, including reasonable attorneys' fees; and (4) award Plaintiffs all other just and proper relief.

Respectfully submitted,

/s/ Mark F. Criniti
John D. LaDue (19039-71)
R. John Kuehn (22434-71)
Mark F. Criniti (26324-71)
LaDue Curran & Kuehn LLC
200 First Bank Building
205 West Jefferson Blvd.
South Bend, Indiana  46601
(574) 968-0760 (telephone)
(574) 968-0761 (facsimile)
jladue@lck-law.com
jkuehn@lck-law.com
mcriniti@lck-law.com

*Attorneys for Plaintiffs*
*Pamela Flick and Mary Dowling-Stefanski*

12

## **CERTIFICATE OF SERVICE**

I certify that on May 18, 2009, I electronically filed the foregoing document with the Court using the CM/ECF system, which sent notice of such filing to the following:   Christopher J. DeGroff; Cintra D. Bentley; John D. LaDue; R. John Kuehn; and Mark F. Criniti.

/s/ Mark F. Criniti

13